KSR 11/13/01 13:37

3:01-CV-01777 SUSTEREN V. JONES

*13*

*OPPM.*

BILL LOCKYER
Attorney General of the State of California
MANUEL M. MEDEIROS
Senior Assistant Attorney General
LOUIS R. MAURO
Supervising Deputy Attorney General
SUSAN R. OIE
Deputy Attorney General
State Bar No. 72140
  1300 I Street, Suite 125
  P.O. Box 944255
  Sacramento, CA  94244-2550
  Telephone: (916) 324-5345
  Fax: (916) 324-8835

Attorneys for Defendant
BILL JONES, CALIFORNIA SECRETARY OF STATE

FILED
01 NOV -9 AM 10: 06
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY Ridgeway  DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADAM VAN SUSTEREN,<br><br>                                    Plaintiff,<br><br>v.<br><br>BILL JONES, in his official capacity as California Secretary of State; MIKEL HAAS, in his official capacity as Registrar of Voters,<br><br>                                    Defendants. | CASE NO. CV 01-1777 BTM (POR)<br><br>DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>DATE:     November 23, 2001<br>TIME:     11:00 a.m.<br>ROOM:   15<br><br>The Honorable Barry Ted Moskowitz |

## INTRODUCTION

Plaintiff ADAM VAN SUSTEREN is seeking access to the ballot for California's 2002 Primary Election as a Libertarian Party candidate for member of the House of Representatives. He challenges the constitutionality of California Elections Code section 8001,

1.

Defendant's Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment

subdivision (a)(2) (Section 8001)[1], a disaffiliation statute, on the ground that it violates the Qualifications Clause of the United States Constitution.[2] Defendant Bill Jones, California Secretary of State, asserts that, by focusing on the wrong constitutional provision, Plaintiff has failed to recognize the fact that the statute is a reasonable exercise of the State's authority to regulate the time, place and manner of holding elections for Congress, an authority expressly granted to the States by the Elections Clause of the Constitution.[3] The United States Supreme Court has already ruled favorably on California's disaffiliation statute for independent candidates in *Storer v. Brown*, 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). It is Defendant's position that Plaintiff's Complaint is controlled by *Storer* and that his motion for summary judgment must therefore be denied.

## STANDARD OF REVIEW

Summary judgment shall be entered when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56, subd. (c). Specifically, a facial challenge to the constitutionality of a statute is ripe for

---

1. Elections Code section 8001 provides in relevant part:

   (a) No declaration of candidacy for a partisan office...shall be filed, by a candidate unless (1) at the time of presentation of the declaration and continuously for not less than three months immediately prior to that time....the candidate is shown by his affidavit of registration to be affiliated with the political party the nomination of which he seeks, and (2) the candidate has not been registered as affiliated with a qualified political party other than that political party the nomination of which he seeks within 12 months....immediately prior to the filing of the declaration.

2. Article I, section 2, clause 2, of the United States Constitution provides:

   No person shall be a Representative who shall not have attained to the age of twenty-five years, and been seven years a citizen of the United States, and who shall not, when elected, be an inhabitant of that state in which he shall be chosen.

3. Article I, section 4, clause 1, of the United States Constitution provides:

   The times, places and manner of holding elections for Senators and Representatives, shall be prescribed in each state by the legislature thereof; but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators.

2.

resolution by summary judgment. *Bullfrog Films, Inc. v. Wick*, 847 F.2d 502, 505-06 (9th Cir. 1988).

## ARGUMENT

### I

### ELECTIONS CODE SECTION 8001 IS A REASONABLE BALLOT ACCESS REGULATION

That there is no merit to Plaintiff's Complaint or to this Motion is demonstrated by the holding in *Storer*, in which the United States Supreme Court upheld former Section 6830, subdivision (d), of the California Elections Code,[4] requiring an independent candidate for Congress to have been disaffiliated from any political party for one year prior to the immediately preceding primary election.[5] In rejecting the plaintiffs' contention that the provision violates the rule that substantial burdens on the right to vote and associate are constitutionally suspect and invalid unless essential to serve a compelling state interest, the Court, citing the Elections Clause, held

> [A]s a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes.

*Id.* at 730.

The Court also noted the State's legitimate interest in regulating the number of candidates on the ballot, stating that the State also 'has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Id.* at 732, 733.

In upholding the statute, the Court held that the disaffiliation requirement for independent candidates

//

---

4. Unless otherwise stated, all references to statutes are to the California Elections Code.

5. This provision is now found in Section 8550, subdivision (f), which requires party disaffiliation for a period of 13 months preceding the general election at which the candidate for office shall be elected. The general election is scheduled for November 5, 2002.

3.

Defendant's Memorandum of Points and Authorities in Opposition to Motion for Summary Judgment

> is expressive of a general state policy aimed at maintaining the integrity of the various routes to the ballot. It involves no discrimination against independents. Indeed, the independent candidate must be clear of political party affiliations for a year before the primary; the <u>party</u> candidate must not have been registered with another party for a year before he files his declaration, which must be done not less than 83 and not more than 113 days prior to the primary. (Emphasis supplied.)

*Id.* at 733-34.

In so holding, the Court recognized and did not criticize the obvious fact that the disaffiliation statute would require a potential independent candidate to "anticipate his candidacy substantially in advance of his election campaign." *Ibid.* Nor did the Court criticize the fact that the disaffiliation requirement for party candidates was, in fact, for a longer period of time.

Finally, the Court stated:

> It appears obvious to us that the one-year disaffiliation provision furthers the State's interest in the stability of its political system. We also consider that interest as not only permissible, but compelling and as outweighing the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status ... the Constitution does not require the State to choose ineffectual means to achieve its aims. To conclude otherwise might sacrifice the political stability of the system of the State, with profound consequences for the entire citizenry, merely in the interest of particular candidates and their supporters having instantaneous access to the ballot.

*Id.* at 736.

With this statement, the Court made it clear that, while access to the ballot may be a right of constitutional dimension, "instantaneous" access is not.

In concluding that the statute was not unconstitutional and that the two plaintiffs who sought independent candidate status were properly barred from the ballot, the Court bluntly stated that the statute was "an absolute bar to candidacy and a valid one." *Id.* at 737. The Court also noted that although the plaintiffs could not qualify as independent candidates, they could nevertheless resort to the write-in alternative provided for in the Elections Code. *Ibid.*, fn. 7.

Finally, in direct response to the *Storer* plaintiffs' argument that the disaffiliation statute constituted an additional qualification for office in violation of the Qualifications Clause, the Court noted that "the non-affiliation requirement no more establishes an additional

requirement for the office of Representative than the requirement that the candidate win the primary to secure a place on the general ballot or otherwise demonstrate substantial community support." *Id.*, at 746, fn. 16.

The analogy to the instant case is obvious and inescapable. Plaintiff herein changed his voter preference three times over the course of eight months, his current preference being the Libertarian Party which he joined in June of this year. Defendant's Undisputed Facts No. 1-3. Thus, although he satisfies the party affiliation requirement of Section 8001, he does not satisfy the party <u>disaffiliation</u> requirement of that section.[6] Defendant's Undisputed Fact No. 8. As was noted by the Supreme Court in *Storer*, a State has a valid interest in controlling the number of candidates on the ballot and a duty to protect its political processes. The Court also recognized, obviously with approval, the State's policy of protecting the integrity of the routes to the ballot. Defendant's Undisputed Fact No. 6.

Plaintiff's situation herein is similar to that of the two would-be Congressional candidates in *Storer*. He, too, simply did not act with sufficient dispatch to qualify as a party candidate - for <u>any</u> party. He could, however, have run as an independent candidate had he filed his nomination papers by October 5, 2001, which date would have satisfied the disaffiliation statute for independent candidates. Defendant's Undisputed Fact No. 9. Again, it is now too late to pursue that option. Defendant's Undisputed Fact Nos. 4, 9. However, the write-in route to the ballot as a Libertarian Party candidate for Congress is still available to him. Defendant's Undisputed Fact No. 10.

To allow Plaintiff to be named as the Libertarian Party candidate for House of Representatives on the March Primary ballot would open the door to chaos, as there would no

---

6. The fact that the Executive Committee of the California Libertarian Party passed a resolution ostensibly waiving the one-year party disaffiliation requirement for placement on the March 2002 Primary Election ballot (and only for the March 2002 primary ballot) as a Libertarian Party candidate is of no consequence. The resolution was apparently passed for the specific purpose of allowing Plaintiff herein to run as the Libertarian Party candidate for House of Representatives from the 53rd District. But there is no showing that a political party, by resolution of its Executive Committee, can, in effect, repeal a state statute, even on a one-time basis, as is being attempted herein. The resolution is without legal force or effect.

longer be any basis for denying access to the ballot to anyone who simply files nomination papers. The Court in *Storer* recognized the State's legitimate interest in controlling the number of candidates on the ballot, an interest of which the Libertarian Party is well aware. In *Libertarian Party of Illinois v. Rednour*, 108 F.3d 768 (7th Cir. 1997), a five percent petitioning requirement for new political parties effectively kept the Libertarian Party and seven of its Congressional candidates off the Illinois primary election ballot. In upholding the statute, the Appellate Court noted that the Supreme Court "has long permitted states to impose various restrictions limiting a candidate's access to the ballot." *Id.*, at 774. Specifically, the Seventh Circuit stated:

> ...[T]he Court has "never required a State to make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access." [Citation omitted.] To demand otherwise would require a state's political system to sustain some damage before it could correct the problem, deprive state legislatures of the ability to show foresight in avoiding potential deficiencies, and inevitably lead to endless litigation regarding the sufficient amount of voter confusion and ballot overcrowding needed to warrant ballot access restrictions.

*Ibid.*[2/]

Based on the foregoing, it is clear that, as a matter of law, Section 1008 is a constitutionally valid ballot access regulation and that this motion should be denied.

## II

## ELECTIONS CODE SECTION 8001 DOES NOT CONSTITUTE AN ADDITIONAL QUALIFICATION FOR MEMBERSHIP IN THE UNITED STATES HOUSE OF REPRESENTATIVES

In support of his motion for summary judgment, Plaintiff cites *U.S. Term Limits v. Thornton*, 514 U.S. 779 (1995), and *Schaefer v. Townsend*, 215 F.3d 1031 (9th Cir. 2000). Both

---

7. Exhibit A to Plaintiff's Motion is a declaration noting that only nine other states have party disaffiliation requirements and none of those requires disaffiliation for a period greater than eight months. Winger Declaration, ¶ 7. It would be hard to imagine a more irrelevant observation. The issue herein is whether the California provision constitutes an additional qualification in violation of the Qualifications Clause or is a reasonable regulation pursuant to the Elections Clause. The United States Supreme Court has already answered that question in the *Storer* case. Whether or not other states have disaffiliation statutes is not germane to the issue.

1   cases deal with a state's attempt to impose qualifications on membership in the House of
2   Representatives over and above those set forth in the Constitution. As demonstrated above,
3   neither case is applicable herein.

4         In *Schaefer*, the Ninth Circuit found California Elections Code section 201
5   unconstitutional as applied to candidates for membership in the House of Representatives
6   because it required residency in California at the time nomination papers were filed, rather than
7   at the time of the election. The effect of Section 201, therefore, was to bar all out-of-state
8   citizens from becoming a candidate for Congress to represent California. The statutory bar was
9   total and precluded access to the ballot via any route provided for by the Elections Code. In
10  holding the provision unconstitutional, the Court reviewed the history of the Qualifications
11  Clause and determined that the Framers "drafted the Constitution having explicitly rejected any
12  residency requirement." *Schaefer, supra*, 215 F.3d. at 1036. Thus, the Court held, the California
13  provision directly "contravenes the express language of the Qualifications Clause and ... extends
14  far beyond any procedural requirement previously upheld." Id. at 1038.

15        The difference between *Schaefer* and the case at bar, of course, is that Section
16  8001 does not bar all routes to the ballot in California.[8] In *Schaefer*, a candidate was barred from
17  pursuing any route to the ballot unless he was a resident of California at the time he filed his
18  nomination papers. In contrast, Section 8001 is only a bar to those who do not use sufficient
19  foresight in anticipating their own candidacies, as noted by the Court in *Storer*. *Storer, supra*,
20  425 U.S. at 734. It is no bar at all to write-in candidates.

21        *Term Limits* is not applicable herein because it was a case dealing with an
22  undeniable attempt to augment the Qualifications Clause, specifically, an attempt to limit the
23  number of terms an Arkansas member of Congress could serve; whereas, Section 1008 is simply
24  a procedural measure that applies equally to all candidates. *Term Limits* itself observed that
25  states are entitled to "adopt 'generally applicable and evenhanded restrictions that protect the
26  integrity and reliability of the electoral process itself,'" quoting *Anderson v. Celebrezze*, 460 U.S.

---

28    8. California has three routes by which a candidate may seek nomination or election to the House of Representatives. Defendant's Undisputed Fact No. 7.

7.

780, 788 (1983). *Term Limits, supra*, 524 U.S. at 834. The Court also noted its conclusion in *Storer* that the States have an interest in having elections that are orderly, fair, and honest, rather than chaotic. *Ibid.*

As noted in the Introduction, Plaintiff has focused on the Qualifications Clause of the U.S. Constitution rather than the Elections Clause, the relevant Constitutional provision in this case. As a result, his analysis of Section 8001 is flawed, leaving his summary judgment motion without support, and it should therefore be denied.

## III

## THE REMAINING ARGUMENTS ARE WITHOUT MERIT

In Section D of his Memorandum, Plaintiff attempts to argue the rights of the Libertarian Party. The Libertarian Party is not a party to this lawsuit and its rights are therefore not at issue. Hence, citation to *Eu v. San Francisco Democratic Com.*, 489 U.S. 214 (1989) and to *Tashjian v. Republican Party of Connecticut et al.*, 479 U.S. 208 (9186), regarding the rights of political parties, is unavailing.

Moreover, Section 8001 has no effect whatsoever on Plaintiff's right to associate with the Libertarian Party. He can even be a write-in candidate for the Libertarian Party, which, of course, remains free to support his candidacy. The fact that he still retains the right to be a write-in candidate (and could have been an independent candidate for the general election if he had acted with more alacrity) defeats his claim of denial of ballot access. *Cross v. Eu*, 430 F.Supp. 1036, 1038, n. 2 (N.D.Cal. 1977).

Section E of the Memorandum alleges that Section 1008 violates Plaintiff's right to equal protection under the Fourteenth Amendment. Plaintiff asserts that if he were to run for Congress in any other state, he would be "eligible." Presumably, he is limiting this statement to the existence *vel non* of a party disaffiliation statute. Otherwise, there is no evidentiary support for such a sweeping statement because there is no evidence before the court regarding all the other regulatory ballot access requirements adopted by all the other States. Moreover, to the extent that the time period contained in the disaffiliation statutes of those states that have them exceeds the period between the date he joined the Libertarian Party and that state's deadline for

1 filing nomination papers, Plaintiff would not be eligible to run. There is no evidence in the
2 record regarding those state's filing dates. In any event, as noted above, other States' ballot
3 access regulations have no relevance herein.

4       Finally, the availability of alternate routes to the ballot defeats a claim of violation
5 of the Equal Protection Clause. *Jenness v. Fortson*, 403 U.S. 431, 440-441, 91 S.Ct. 1970, 1975,
6 29 L.Ed.2d 554 (1971).

## CONCLUSION

8       California Elections Code section 1008 is a reasonable provision regulating access
9 to the ballot and without which elections in California would have the potential of descending
10 into utter chaos. The law does not require States to risk such a result. Contrary to Plaintiff's
11 Complaint, he still retains the ability to be the Libertarian Party's candidate for House of
12 Representatives as a write-in candidate. That being the case, his claim of denial of ballot access
13 is without merit and this motion should be denied.

14       Because there are no material facts in dispute and Defendant Jones is therefore
15 entitled to judgment as a matter of law, and because this Court has the authority to grant
16 summary judgment *sua sponte* to either party without requiring that a cross-motion be filed,
17 Defendant requests that the Court deny Plaintiff's motion and grant summary judgment to him.
18 *Golden State Transit Corporation v. City of Los Angeles*, 563 F.Supp. 169, 170-171 (C.D.Cal.
19 1983). *See also: Walter v. Dunlap*, 250 F.Supp. 76, 81 (D.C.Pa.1966), affirmed 368 F.2d 118
20 (3rd Cir.1966).

21 Dated:  November 8, 2001.       Respectfully submitted,

BILL LOCKYER
Attorney General of the State of California

MANUEL M. MEDEIROS
Senior Assistant Attorney General

LOUIS R. MAURO
Supervising Deputy Attorney General

SUSAN R. OIE
Deputy Attorney General
Attorneys for Defendant

9.

# DECLARATION OF SERVICE

Case Name:   *Van Susteren v. Bill Jones, California Secretary of State*
Case No.:    San Diego County Superior Court, Case No. GIC 737638

I declare: I am employed in the County of Sacramento, California. I am 18 years of age or older and not a party to the within entitled cause; my business address is 1300 I Street, Suite 125, Sacramento, California 95814.

On **November 8, 2001** I served the attached

**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DEFENDANT'S SEPARATE STATEMENT OF UNDISPUTED FACTS IN SUPPORT THEREOF; DECLARATION OF MELISSA WARREN IN SUPPORT THEREOF**

in said cause, by placing a true copy thereof enclosed in a sealed envelope and served as follows:

**✔** United States mail by placing such envelope(s) with postage thereon fully prepaid in the designated area for outgoing mail in accordance with this office's practice, whereby the mail is deposited in a United States mailbox in the City of Sacramento, California, after the close of the day's business

___ Golden State Overnight Courier

___ Facsimile at the following Number: →

___ Personal Service at the below address at the following time: → ___ a.m./p.m.

to the parties addressed as follows:

| | |
|---|---|
| Adam Van Susteren<br>2461 Union Street, Suite 2<br>San Diego, CA 92101 | Timothy M. Barry, Senior Deputy<br>John J. Sansone<br>County Counsel of San Diego<br>1600 Pacific Highway, Room 355<br>San Diego, CA 92101-2469 |

I declare under penalty of perjury under the laws of the State of California, that the foregoing is true and correct, and that this declaration was executed at Sacramento, California on **November 8, 2001.**

*/s/ Ruthann Andersen*
Ruthann Andersen